**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PENNEAST PIPELINE COMPANY, LLC** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:18-281** |
| v. | : | (JUDGE MANNION) |
| **A PERMANENT EASEMENT OF 0.60 ACRE ± AND A TEMPORARY EASEMENT OF 0.60 ACRE ± IN TOWAMENSING TOWNSHIP, CARBON COUNTY, PENNSYLVANIA, TAX PARCEL NOS. 16-56-A73.05 AND 16B-56-A7; SUSANA V. BULLRICH; BANK OF AMERICA, N.A.; AND ALL UNKNOWN OWNERS** | : : : : : | |
| **Defendants** | : | |

## MEMORANDUM

### I. INTRODUCTION

Presently before the court is a motion for partial summary judgment (Doc. 15) filed by the plaintiff, PennEast Pipeline Company, LLC ("PennEast"). After considering the hearing testimony and opposing briefs, this court will **GRANT** plaintiff's motion.

## II. BACKGROUND

On September 24, 2015, PennEast filed an application with the Federal Energy Regulatory Commission ("FERC") under section 7(c) of the Natural Gas Act ("NGA"), 15 U.S.C. §717f(c), and parts 157 and 284 of the FERC's regulations, to obtain a certificate of public convenience and necessity for its project to construct and operate a natural gas pipeline in Pennsylvania and New Jersey. (Doc. 2-2, at 2). FERC mailed a letter to affected landowners, describing the project and inviting them to participate in the environmental review process. (Doc. 2-2, at 36). On July 22, 2016, FERC issued a draft environmental impact statement ("EIS"), setting a public comment period from July 29, 2016 to September 12, 2016. (Doc. 2-2, at 37). FERC staff held six public comment meetings between August 15 and 17, 2016, at which over four hundred speakers commented. (Doc. 2-2, at 37). FERC also received over four thousand written comments in response to the draft EIS. (Doc. 2-2, at 37).

On November 4, 2016, FERC sent a letter to landowners regarding thirty-three route modifications and allowed an additional thirty day comment period. (Doc. 2-2, at 37). On April 7, 2017, FERC issued a final EIS. (Doc. 2-2, at 37). Thereafter, on January 19, 2018, FERC issued an order granting

PennEast a certificate of public convenience and necessity to construct and operate a new pipeline, known as the PennEast Project. (Doc. 2-2, at 2).

On February 6, 2018, PennEast filed a verified complaint in eminent domain (Doc. 1) against the defendants pursuant to Federal Rule of Civil Procedure 71.1. In order to construct, operate, and maintain the FERC-approved project, PennEast needs to obtain rights of way as described and depicted in Exhibits A-1 (Doc. 2) and A-2 (Doc. 2-1) attached to the complaint in this action. (Doc. 15-2, at 4). On April 30, 2018, PennEast filed a motion for partial summary judgment (Doc. 15) and a corresponding brief in support (Doc. 16). That same day, PennEast filed a motion for preliminary injunction (Doc. 17) and corresponding brief in support (Doc. 18). Defendant/landowner Susana V. Bullrich ("Bullrich") filed a brief in opposition to both motions (Doc. 20, Doc. 21). Then, PennEast filed a consolidated reply brief to both motions on May 29, 2018. (Doc. 23). On November 27, 2018, a hearing was held before this court regarding PennEast's motions.

### III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A factual dispute is genuine if a reasonable jury could

find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record, which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the

non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Federal Rule of Civil Procedure 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

### IV. DISCUSSION

The Natural Gas Act permits the holder of a certificate of public convenience and necessity issued by FERC to use eminent domain to acquire rights of way necessary to construct, operate, and maintain a project as approved by the FERC order. 15 U.S.C. §717f(h). Courts have held that the NGA authorizes a party to exercise the federal power of eminent domain if it meets the three-prong test set forth in the statute:

1) The party must hold a FERC Certificate of Public Convenience and Necessity;

2) The party has not been able to acquire the property rights required to construct, operate, and maintain a FERC-approved pipeline by agreement with the landowners; and

3) The value of the property sought to be condemned is more than $3,000.

*Transcontinental Gas Pipe Line Company, LLC v. Permanent Easement for 2.14 Acres, et al.*, No. 17-715, 2017 WL 3624250, at *2 (E.D.Pa. Aug. 23, 2017), *aff'd*, 907 F.3d 725 (3d Cir. 2018) (citing, *e.g.*, *Columbia Gas Transmission, LLC v. 1.01 Acres*, 768 F.3d 300, 304 (3d Cir. 2014).

There is no dispute that PennEast has been issued an order from FERC (Doc. 12, at 4), that it has been unable to acquire the property rights in question to construct, operate, and maintain the FERC-approved pipeline by agreement with the landowners (Doc. 12, at 7), and that the value of the properties in question is greater than three thousand dollars (Doc. 12, at 7). Conversely, Bullrich does contest that PennEast is the holder a certificate of public convenience and necessity, reasoning that "the FERC Order is conditional and the project may never be built." (Doc. 12, at 4). Despite the unambiguous language found in the FERC order, which grants PennEast a certificate of public convenience and necessity (Doc. 2-2, at 83), Bullrich has opposed the entry of partial summary judgment in this matter and presents several arguments in opposition to PennEast's exercise of eminent domain. (Doc. 21). Bullrich alleges that: (1) this court lacks subject matter jurisdiction; (2) PennEast failed to show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law[1]; and (3) if her property is taken before a judicial pre-deprivation hearing is held, then the taking will violate her due process rights under the Fifth Amendment to the

---

[1] In her briefs, Bullrich alleged that PennEast was seeking rights beyond those approved by the FERC order. Following a hearing before this court, the parties met and revised PennEast's proposed order so that no dispute remains. PennEast's revised proposed order has been adopted by the court and all stipulated changes have been incorporated into the court's order.

United States Constitution. (Doc. 21). These arguments are unpersuasive. Bullrich cannot establish any genuine issue of material fact as to the three conditions set forth in the Natural Gas Act required prior to the exercise of eminent domain by PennEast; therefore, PennEast is entitled to the entry of partial summary judgment in this matter.

Bullrich alleges that "this [c]ourt lacks subject matter jurisdiction until PennEast has acquired the authorizations required under federal law that are necessary for construction to begin." (Doc. 21, at 6). In other words, "PennEast is simply not the holder of a certificate that is sufficiently final to take Mrs. Bullrich's property." (Doc. 21, at 12). While Bullrich does not dispute that FERC issued an order to PennEast, (Doc. 12, at 4), she argues the order is "conditional" and that PennEast does not have the right of eminent domain because they do not currently have the right to construct the pipeline. (Doc. 21, at 11).

The NGA does not contain a requirement that the holder of a FERC certificate must satisfy all conditions of the certificate prior to the exercise of eminent domain. To the contrary, the FERC order specifically states that

> [u]nder section 7 of the NGA, the Commission has jurisdiction to determine if the construction and operation of proposed interstate pipeline facilities are in the public convenience and necessity. Once the Commission makes that determination, it is section 7(h) of the NGA that authorizes a certificate holder to acquire the necessary land or property to construct the approved facilities by

exercising the right of eminent domain if it cannot acquire the easement by an agreement with the landowner.

(Doc. 2-2, at 18).

"The FERC certificate in question does, in fact, contain prerequisite conditions, some of which remain unmet at this time." *Transcontinental*, 2017 WL 3624250, at \*6, *aff'd,* 907 F.3d 725 (3d Cir. 2018). However, Bullrich has not cited any binding authority holding that PennEast's exercise of eminent domain is prohibited until the conditions in the FERC certificate are met. "It is true that there are conditions in the FERC certificate that [PennEast] will need to meet prior to commencing actual construction of the pipeline, but the fulfillment of these conditions is not a prerequisite to [PennEast's] exercise of eminent domain" *id.*; if it were, some requirements—like surveying the property to comply with certificate conditions—would never be met and as a result, the pipeline would never be built.

Second, Bullrich argues that PennEast is not entitled to partial summary judgment because it has failed to satisfy its burden under Federal Rule of Civil Procedure 56. (Doc. 21, at 14). Specifically, Bullrich argues that "[e]ven if jurisdiction exists…summary judgment is inappropriate because PennEast has failed to foreclose the possibility that it will not be able to construct this project." (Doc. 21, at 6). This assertion rests upon the same foundation as her previous argument—that the conditions of the FERC certificate must be

entirely met before any taking can occur. As previously stated, the NGA and the FERC order do not state that a certificate holder must meet all of the certificate conditions prior to the taking of property. Bullrich's argument, though repetitive, is not novel. The Third Circuit Court of Appeals recently issued a precedential decision in a similar case that discussed this very issue. *Transcontinental Gas Pipeline Company, LLC v. Permanent Easements for 2.14 Acres, et al.*, 907 F.3d 725 (3d Cir. 2018). In the decision, the Circuit Court discussed the landowners' "claim that because the FERC certificate was conditioned on certain requirements, some of which had not yet been met, the certificate could not be used to exercise eminent domain." *Id.* at 732. The Circuit Court noted that the District Court rejected this argument because the NGA does not require FERC certificate holders to satisfy all the certificate's conditions before exercising eminent domain, and because the certificate itself contained no such requirement. *Id.* In *Transcontinental*, the Third Circuit permitted a condemnation procedure where the District Court granted the plaintiff's motions for partial summary judgment and preliminary injunction before plaintiff met all of the conditions of the certificate order. *Transcontinental*, 907 F.3d 725. By allowing this procedure in *Transcontinental*, the Third Circuit has made Bullrich's argument—that FERC

certificate conditions must be entirely met prior to the taking of property under 15 U.S.C. §717f(h)—moot.

It is true that PennEast's application to complete one of the FERC certificate conditions in New Jersey, has presently been denied. However, that denial by the New Jersey Department of Environmental Protection ("NJDEP") was without prejudice. In fact, PennEast's application was denied without prejudice because it lacked "necessary information to determine compliance with the freshwater wetlands rules." (Doc. 20-2, at 2). Ironically, that information could only be obtained with access to a significant portion of the right of way in New Jersey, where access had been denied by the landowners. Without access to the New Jersey properties, PennEast was unable to complete the surveys necessary to supply the needed information in its application to the NJDEP. That denial was not final, nor on the merits. Rather, "PennEast may resubmit a new complete application when it has all of the required information as identified in the NJDEP's letter…" (Doc. 20-2, at 2).

Now, Bullrich argues that PennEast should be prevented from taking her property in Pennsylvania because, as she argues, the NJDEP denial means the pipeline may never be built. Obviously, a similar denial could occur in Pennsylvania if PennEast is not allowed to access the property for survey

purposes and thereafter submit those results to the Pennsylvania Department of Environmental Protection ("PADEP") for a review on the merits.

If the FERC certificate was to be interpreted as requested by Bullrich, no entry onto private property could take place before all pre-conditions were met, and yet, many of the pre-conditions cannot be met without access to the property. This contorted reasoning would make the FERC certificate nothing more than a meaningless piece of paper. Said another way, such action would effectively preclude PennEast from ever being able to submit a completed application to the PADEP. Since the approval of the PADEP is a condition of the FERC certification that must be met prior to receiving authorization to begin construction of the pipeline, without access to the Bullrich property, PennEast will never be able to fulfill the necessary preconditions and receive those approvals. Such a result would make a mockery of the process.

Lastly, Bullrich argues that a taking of her property before the D.C. Circuit Court decides her challenge to the validity of the FERC order is a violation of Bullrich's due process rights. (Doc. 21, at 25). She also alleges that she cannot obtain full relief at a post-deprivation hearing. (Doc. 21, at 24). The Third Circuit has held that a landowner facing condemnation, who has received notice and the opportunity to respond in the FERC proceedings and will have the opportunity to litigate just compensation in the district court, has

received due process. *Transcontinental Gas Pipeline Company, LLC v. Permanent Easement for 2.59 Acres, et al.*, 709 Fed.Appx. 109, 112 (3d Cir. 2017). In addition to having the notice and opportunities laid out by the Third Circuit, Bullrich filed briefs and participated in oral argument in this court, filed a rehearing request with FERC, and filed an appeal in the D.C. Circuit Court of Appeals. Thus, Bullrich has been afforded more due process than is required by law.

In the alternative, Bullrich requests a stay in this matter until the D.C Circuit Court issues a decision in her challenge to the FERC order. (Doc. 21, at 25). "The NGA explicitly provides that neither a request for rehearing before FERC nor judicial review can stay the effectiveness of a FERC certificate. *Transcontinental*, 907 F.3d at 740. Therefore, Bullrich's request for a stay shall be denied.

## V. CONCLUSION

For the reasons set forth above, plaintiff's motion for partial summary judgment shall be **GRANTED**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION
United States District Judge**

**DATE: December 3, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2018 MEMORANDA\18-281-01.docx